**No. 22-15889**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

ANDREW MATTIODA,

Plaintiff-Appellant,

v.

CLARENCE WILLIAM NELSON II, in his official capacity as Administrator of
National Aeronautics and Space Administration,

Defendant-Appellee.

_____

**DEFENDANT-APPELLEE'S ANSWERING BRIEF**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
No. 5:20-cv-03662-SVK (Hon. Susan van Keulen)

_____

**STEPHANIE M. HINDS**
United States Attorney
**MICHELLE LO**
Chief, Civil Division
**ADRIENNE ZACK**
Assistant United States Attorney
450 Golden Gate Avenue, 9th Fl.
San Francisco, California 94102
Telephone: (415) 436-7031

February 17, 2023        **Attorneys for Defendant-Appellee**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 3

STATEMENT OF ISSUES ................................................................. 4

STATEMENT OF THE CASE ............................................................. 4

I.    Factual Background ............................................................... 5

    A.    Dr. Mattioda's Conclusory Allegations in Support of Harassment Claim ....................................................... 5

    B.    A Hiring Panel Recommends Dr. Sandford over Dr. Mattioda for a Senior Technical Scientist Position ......................... 7

II.    The EEO Proceedings ............................................................ 8

III.    The District Court Proceedings ............................................... 8

    A.    Dismissal of Claims in the First Amended Complaint ......... 8

    B.    Summary Judgment on Disability Discrimination Claims and Settlement of Remaining Performance Review Claim ...... 10

SUMMARY OF ARGUMENT ............................................................ 11

STANDARD OF REVIEW ................................................................. 13

I.    Motion to Dismiss for Failure to State a Claim ........................... 13

II.    Motion for Summary Judgment ............................................... 14

ARGUMENT ................................................................................... 15

I.    The District Court Properly Dismissed Dr. Mattioda's Disability-Based Harassment Claim for Failure to State a Claim ............................. 15

A.     Dr. Mattioda Did Not Plead Facts Showing a Nexus Between His Disability and the Allegedly Harassing Conduct ................................ 17

B.     Dr. Mattioda Did Not Plausibly Allege Severe or Pervasive Harassment ........................................................................ 21

C.     The District Court Properly Considered All of Dr. Mattioda's Allegations and Applied the Correct Pleading Standard ................... 23

II.    The District Court Properly Granted NASA's Motion for Summary Judgment on Dr. Mattioda's Disability Discrimination Claim Based on his Non-Selection .................................................................... 25

A.     Dr. Mattioda Cannot Establish a Prima Facie Case Because Dr. Sandford's Superior Qualifications, Not Dr. Mattioda's Disabilities, Motivated the Hiring Decision ........................................... 27

B.     Dr. Mattioda Did Not Establish that Dr. Lee Improperly Influenced the Panel ............................................................... 30

C.     Even if Dr. Mattioda Could Establish a Prima Facie Case, the Panel and Dr. Tu Were Guided by the Legitimate Purpose of Hiring the More Qualified Candidate ..................................................... 33

D.     Dr. Mattioda Cannot Show the Hiring Explanation Is Pretextual ...... 35

CONCLUSION ....................................................................... 37

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1985) ...................................................................... 12, 15

*Anthony v. Trax Int'l Corp.*,
955 F.3d 1123 (9th Cir. 2020) .............................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................... passim

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ...............................................................13

*Balser v. Dep't of Just., Off. of U.S.,
Tr.*, 327 F.3d 903 (9th Cir. 2003) ........................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................. 13, 14, 24

*Brown v. City of Tucson*,
336 F.3d 1181 (9th Cir. 2003) ..............................................................16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................... 14, 15, 27, 31

*Chuang v. Univ. of Cal. Davis*,
225 F.3d 1115 (9th Cir. 2000) ..............................................................26

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ..............................................................35

*Davis v. Omni-Care*,
482 F. App'x. 102 (6th Cir. 2012)........................................................32

*Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*,
642 F.3d 728 (9th Cir. 2011) ........................................................ 26, 27

*E.E.O.C. v. Prospect Airport Servs., Inc.*,
    621 F.3d 991 (9th Cir. 2010) ..................................................................21

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ........................................................... 16, 21, 22

*Flowers v. S. Reg'l Physician Servs. Inc.*,
    247 F.3d 229 (5th Cir. 2001) ........................................... 12, 16, 24

*Garity v. APWU Nat'l Lab. Org.*,
    655 F. App'x 523 (9th Cir. 2016) ........................................................16

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993) ..................................................................22

*Heimrich v. Dep't of the Army*,
    947 F.3d 574 (9th Cir. 2020) ..................................................................13

*Howard v. HMK Holdings, LLC*,
    988 F.3d 1185 (9th Cir. 2021) ..................................................................14

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..................................................................14

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008) ..................................................................23

*Keller-McIntyre v. San Francisco State Univ.*,
    No. 06-cv-3209 MMC, 2007 WL 776126 (N.D. Cal. Mar. 12, 2007) .................22

*Kortan v. California Youth Auth.*,
    217 F.3d 1104 (9th Cir. 2000) ..................................................................21

*Lober v. Dejoy*,
    845 F. App'x 672 (9th Cir. 2021) ..................................................................26

*Lucero v. Hart*,
    915 F.2d 1367 (9th Cir. 1990) ..................................................................26

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ..................................................................25

iv

*Morisky v. Broward Cnty.*,
  80 F.3d 445 (11th Cir. 1996) ...............................................................28

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ...............................................................20

*Mustafa v. Clark Cnty. Sch. Dist.*,
  157 F.3d 1169 (9th Cir. 1998) .............................................................25

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) .............................................................................21

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...............................................................13

*Peters v. Shamrock Foods Co.*,
  262 F. App'x 30 (9th Cir. 2007) ..........................................................36

*Petroleum Prods. Antitrust Litig.*,
  906 F.2d 432 (9th Cir. 1990) ...............................................................28

*Puletasi v. Wills*,
  290 F. App'x 14 (9th Cir. 2008) ..........................................................36

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
  323 F.3d 1185 (9th Cir. 2003) .............................................................36

*Ray v. Henderson*,
  217 F.3d 1234 (9th Cir. 2000) .............................................................24

*Schuler v. Chronical Broadcasting Co.*,
  793 F.2d 1010 (9th Cir. 1986) .............................................................35

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .................................................... 11, 17

*Steckl v. Motorola, Inc.*,
  703 F.2d 392 (9th Cir. 1983) ...............................................................37

*Thornhill Publ'g Co. v. GTE Corp.*,
  594 F.2d 730 (9th Cir. 1979) ...............................................................15

*Vasquez v. County of Los Angeles*,
349 F.3d 634 (9th Cir. 2003) ........................................................... 22, 26

*Walton v. U.S. Marshals Serv.*,
492 F.3d 998 (9th Cir. 2007) ................................................................ 26

*Wolf v. Buss (America) Inc.*,
77 F.3d 914 (7th Cir. 1996) .................................................................. 26

**Statutes**

28 U.S.C. § 1291 ....................................................................................... 3

28 U.S.C. § 1331 ....................................................................................... 3

29 U.S.C. § 794a(a)(1) .............................................................................. 1

42 U.S.C. § 2000e-16(c) ........................................................................... 1

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................ 13

Fed. R. Civ. P. 12(b)(6) ..................................................................... 13, 14

Fed. R. Civ. P. 56(a) ............................................................................... 15

Fed. R. Civ. P. 56(c)(2) ........................................................................... 30

# INTRODUCTION

Plaintiff-Appellant Andrew Mattioda ("Dr. Mattioda") asks this Court to (1) reverse the dismissal of his harassment claim by alleging the district court did not evaluate the entirety of his allegations, despite the district court's clear consideration of all allegations and determination that they are conclusory and insufficient to state a claim, and (2) reverse summary judgment in favor of Defendant-Appellee National Aeronautics and Space Administration ("NASA")[1] on his discriminatory non-selection claim, which the district court properly based on Dr. Mattioda's failure to point to sufficient evidence to demonstrate a triable issue of fact.

Indeed, to avoid dismissal, Dr. Mattioda was required to offer plausible allegations when the district court gave him the opportunity to amend his deficient pleadings, not mere assumptions and speculation. To avoid summary judgment, Dr. Mattioda should have come forward with evidence showing genuine disputes of material fact, not allegations devoid of support from the admissible record.

Dr. Mattioda has worked at his dream job as a research scientist at NASA since 2000 in various roles, received promotions at the recommendation of his

---

[1] Appellant names the National Aeronautics and Space Administration as a Defendant-Appellee, but this incorrect. Only the agency head is the proper defendant in a Rehabilitation Act case. *See* 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e-16(c).

supervisors Drs. Jessie Dotson ("Dr. Dotson") and Timothy Lee ("Dr. Lee"), and continues his respected, important work there today. After suffering what he perceived as professional setbacks in recent years, including being asked to account for business class flight expenses to comply with budget constraints and being considered but not selected for a competitive senior technical scientist role, Dr. Mattioda alleged Dr. Dotson and Dr. Lee made his dream job a nightmare through disability discrimination. Dr. Mattioda appears to believe his supervisors suddenly took note of his disabilities, which they had never considered or discussed before, and targeted Dr. Mattioda based on those disabilities. Relying on this logical fallacy, Dr. Mattioda failed to plead sufficient facts to state most of his claims, including for harassment, and after discovery, failed to establish a prima facie claim of discrimination in his non-selection. On appeal, Dr. Mattioda still fails to point to facts, rather than suppositions, to support his harassment claim. He also points to no admissible evidence that the District Court overlooked when determining that the record did not support his claim that his non-selection was discriminatory.

This Court should affirm the district court's orders dismissing Dr. Mattioda's disability-based harassment claim and entering summary judgment for NASA on Dr. Mattioda's claim for non-selection.

## JURISDICTIONAL STATEMENT

Dr. Mattioda appeals portions of four orders entered by the Honorable Susan van Keulen of the United States District Court for the Northern District of California. 2-ER-80. In the first order, entered on January 8, 2021, the district court granted in part and denied in part NASA's motion to dismiss. 1-ER-077–078. In the second order, entered on April 26, 2021, the district court dismissed all of Dr. Mattioda's claims except for his disability-based discrimination claims. 1-ER-045. In the third order, entered on February 10, 2022, the district court granted summary judgment in favor of NASA on all but one of Dr. Mattioda's disability discrimination claims. 1-ER-038. In the final order and judgment, entered on May 3, 2022, the district court dismissed the surviving claim with prejudice upon approving the parties' agreement to settle that claim for $1,000. 1-ER-010. The district court entered judgment in favor of NASA on all other claims. *Id.* Dr. Mattioda timely filed a notice of appeal. 2-ER-080–082.

The district court had federal question jurisdiction over this matter under 28 U.S.C. § 1331 because Dr. Mattioda's claims arise under federal law. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.  Whether the district court properly dismissed Dr. Mattioda's cause of action for disability-based harassment where Dr. Mattioda failed to allege plausible facts to support this claim.

2.  Whether the district court properly granted summary judgment for NASA on Dr. Mattioda's disability discrimination claim regarding his non-selection for a promotion where Dr. Mattioda failed to provide sufficient evidence to make a prima facie case, or show that NASA's legitimate, nondiscriminatory reasons for any adverse actions were pretext.

## STATEMENT OF THE CASE

Since August 2007, Dr. Mattioda has been employed as a Space and Planetary Scientist with the Planetary Science Branch ("SST") at the NASA Ames Research Center ("ARC"). 3-ER-381. Dr. Mattioda has experienced hip and spine disorders and lifelong ear infections. *Id.* In his underlying complaints, Dr. Mattioda alleged that he suffered disability discrimination under the Rehabilitation Act, mostly perpetrated by his first-level supervisor, Dr. Dotson, and his second-level supervisor, Dr. Lee. 3-ER-380–415. However, Dr. Mattioda's conclusory allegations were not sufficient to sustain his claim of harassment, and the evidence brought forth in discovery did not sustain his claim of discrimination in his non-

selection on summary judgment.  The district court properly dismissed these claims.

# I.    Factual Background

## A.    Dr. Mattioda's Conclusory Allegations in Support of Harassment Claim[2]

In his complaint, Dr. Mattioda alleged a number of interactions with his supervisors to which he attributed discriminatory motive.  For example, in 2011, Dr. Mattioda inquired with his first-line supervisor, Dr. Dotson, about a potential promotion.  3-ER-383.  Dr. Dotson relayed that Dr. Lee, Dr. Mattioda's second-line supervisor, did not think Dr. Mattioda's application would make it and that he did not want to "poison the well" against Dr. Mattioda for the future when Dr. Mattioda's application was compared to other stronger applications.  *Id.*  Dr. Lee also told Dr. Mattioda that he needed to provide more lectures and publish more research.  3-ER-383–384.  Dr. Mattioda further alleged that that Dr. Lee told him that he did not respect his work and that Dr. Lee believed a colleague, Dr. Allamandola, was doing all the work for Dr. Mattioda.  3-ER-384.  Dr. Mattioda attributed these comments to his disability.  3-ER-385.

Later in 2011, Dr. Mattioda alleged that Dr. Allamandola took a picture of him giving a presentation to convince Dr. Lee that Dr. Mattioda was working on a

---

[2] The factual background regarding this claim is taken from the allegations in Mattioda's Second Amended Complaint, 3-ER-380–415.

particular project.  3-ER-387.  Dr. Mattioda also alleged an incident in which Dr.

Lee criticized Dr. Mattioda for not including an item in a budget.  *Id.*  Dr. Mattioda

again attributed Dr. Lee's treatment to his disability.  *Id.*

Dr. Mattioda also alleged that Dr. Lee and Dr. Dotson did not support some

of Dr. Mattioda's proposals.  3-ER-389–391.  Dr. Mattioda believed this was

because of his disabilities.  *Id.*  He recounted a conversation with colleagues in

which they described comments by Dr. Lee that demonstrated Dr. Lee did not like

Dr. Mattioda.  3-ER-395–396.  Once again, Dr. Mattioda ascribed these comments

to discrimination based on his perception that Dr. Lee was discriminating against

him.  *Id.*

Only a limited number of allegations were linked to Dr. Mattioda's disability

because they involved requests for reasonable accommodations for travel.  For

example, Dr. Mattioda alleged that he was denied a reasonable accommodation

request for an international business class flight after the costs were considered.  3-

ER-382–383.  During this process, Dr. Mattioda alleged that Dr. Lee asked why he

could not just tough it out to travel in coach class.  *Id.*  He also alleged that Dr.

Dotson told him on one occasion in 2011 that he could lose his job because of his

flight requests and that the cost caused an undue hardship on the government.  3-

ER-386.  Dr. Mattioda also alleged that after a new reasonable accommodation for

travel policy was put in place, Dr. Dotson required him to support his travel

requests with a not-to-exceed budget approved by the manager of the travel funds which was not required by the policy. 3-ER-398.

**B. A Hiring Panel Recommends Dr. Sandford over Dr. Mattioda for a Senior Technical Scientist Position**

In June 2017, a senior technical scientist position at the Senior Scientific and Professional (ST) level ("ST position") opened for application. 2-ER-267–274. Dr. Tu, the ARC director, asked another NASA scientist, Dr. Zornetzer, to lead a panel evaluating all candidates. 2-ER-278. Dr. Tu would then recommend a final candidate to NASA Headquarters based on the panel's evaluation. *Id.* Dr. Fonda, Dr. Bernstein, and Dr. Lee were added to the panel; however, after Dr. Mattioda applied, Dr. Lee recused himself from the panel given the history of Dr. Mattioda's EEO complaints against Dr. Lee. 2-ER-295–296. Dr. Bajpayee, a relatively new transfer to ARC who did not know any of the applicants, replaced Dr. Lee. 2-ER-301.

Once the application window closed, human resources screened the initial seven applicants for minimum qualifications, and Dr. Mattioda advanced as one of three finalists. 2-ER-306. Each panel member independently reviewed the finalists, and each member rated another applicant, Dr. Sandford, highest based on the five outlined criteria. 2-ER-308–314. Following their independent evaluations, the panel convened to discuss all candidates and proceeded to present Dr. Sandford as highly selectable to Dr. Tu. 2-ER-305–307. Dr. Tu reviewed all

7

applicants before making a final decision, and selected Dr. Sandford as his
nominee for the ST position. 2-ER-275–282.

## II.   The EEO Proceedings

On August 21, 2015, Dr. Mattioda contacted NASA's Office of Diversity
and Equal Opportunity ("EEO") concerning his claims of discrimination and
harassment based on disability and reprisal for protected activity. SER-085–108.
Dr. Mattioda received the right to file a formal administrative complaint of
employment discrimination on November 6, 2015, and filed his complaint on
November 16, 2015. *Id.* Dr. Mattioda filed three more EEO complaints on August
22, 2016, March 18, 2017, and October 2, 2017. SER-098–174. Dr. Mattioda
requested hearings on all of his complaints but after discovery was completed and
NASA filed a motion for summary judgment, Dr. Mattioda withdrew his request
for hearing. 1-ER-048.

## III.   The District Court Proceedings

### A.   Dismissal of Claims in the First Amended Complaint

Dr. Mattioda filed four separate complaints in the United States District
Court for the Northern District of California, on June 2, 2020, June 5, 2020, June
23, 2020, and July 6, 2020. 1-ER-012, 049. On September 3, 2020, the district
court consolidated the cases. *Id.* As directed by the district court, Dr. Mattioda
filed a consolidated complaint ("FAC") on September 14, 2020. SER-175–218. In

the FAC, Dr. Mattioda alleged that beginning in March 2011, he experienced harassment, discrimination, failure to provide a reasonable accommodation, and reprisal. *See id.* NASA moved to dismiss the FAC. 1-ER-046.

On January 8, 2021, the district court granted in part and denied in part NASA's motion to dismiss the FAC under Rule 12(b)(6). 1-ER-078. The district court held that due to the limitations period within which a federal employee must contact an EEO counselor, claims based on incidents occurring before July 7, 2015 (i.e., claims occurring more than 45 days before Dr. Mattioda first contacted an EEO counselor on August 21, 2015) were dismissed without leave to amend. 1-ER-069. Additionally, any claims based on incidents occurring after August 8, 2017— "the final date of allegations accepted by the agency"—or incidents involving management officials not named in the EEO complaints were dismissed to the extent that these incidents were not sufficiently similar to those in the EEO complaints. 1-ER-056–063. Dr. Mattioda's harassment claims were dismissed for Dr. Mattioda's failure to "adequately allege harassing conduct that is linked to his disability and that is sufficiently pervasive or severe to alter the conditions of employment and create an abusive working relationship." 1-ER-073. The district court granted leave to amend the FAC to address certain deficiencies in Dr. Mattioda's factual pleading. 1-ER-067–077.

Dr. Mattioda then filed the Second Amended Complaint ("SAC"), which contains claims for discrimination, harassment, failure to provide a reasonable accommodation, and reprisal. 3-ER-380–415. NASA again moved to dismiss. 1-ER-039. On April 26, 2021, the district court granted without leave to amend NASA's motion to dismiss Dr. Mattioda's claims for harassment, failure to accommodate, and reprisal. 1-ER-045. The district court reiterated that Dr. Mattioda's discrimination claim could not be based on alleged incidents occurring before July 7, 2015, but allowed that claim to proceed. 1-ER-040. In dismissing Dr. Mattioda's harassment claim, the district court found that the new allegations in support of the harassment claim were "cast as suppositions or requests for inferences that are not based on actual facts of disability-based harassment." 1-ER-041. Thus, the district court found that there were insufficient allegations to support a claim for harassment. 1-ER-042.

## B. Summary Judgment on Disability Discrimination Claims and Settlement of Remaining Performance Review Claim

NASA moved for summary judgment on the surviving disability discrimination claims, which were based on a small number of discrete events. 1-ER-011, 015–016. On February 10, 2022, the district court granted summary judgment with respect to six out of seven events. 1-ER-038. With respect to Dr. Mattioda's claim of discrimination in his non-selection for the ST position, the district court found that Dr. Mattioda's complaints were "process issues" and that

10

Dr. Mattioda had not "establish[ed] a connection between that hiring decision and Mattioda's disability." 1-ER-028. The district court also rejected Dr. Mattioda's "cat's paw" theory that Dr. Lee had manipulated the selection panel because Dr. Mattioda did not establish that Dr. Lee had discriminatory animus or that the panel was indeed manipulated. 1-ER-028–029. The district court denied summary judgment with respect to the one remaining event, where Dr. Mattioda alleged that a less than perfect 2015 performance review constituted disability discrimination. 1-ER-021–022. The parties arrived at a settlement agreement, dated May 2, 2022, which provided that NASA would pay Dr. Mattioda $1,000 to settle the performance review claim. 1-ER-003, 008. On May 3, 2022, the district court approved the settlement agreement, dismissed that claim with prejudice, and entered judgment on the non-settled claims for NASA. 1-ER-010.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's three orders.[3] First, Dr. Mattioda failed to state a claim for harassment in his FAC because he made conclusory allegations that did little more than "recite the elements of a cause of action." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). District courts need

---

[3] In his opening brief, Mattioda only challenges the dismissal of his harassment claim and the grant of summary judgment in favor of NASA on his non-selection claim. "Issues not raised in the opening brief are usually deemed waived." *Balser v. Dep't of Just., Off. of U.S. Tr.*, 327 F.3d 903, 911 (9th Cir. 2003) (quotation omitted).

not accept such recitations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Where Dr. Mattioda pointed to instances of allegedly harassing conduct, he did not plead facts linking the conduct to his disability or facts that the conduct was sufficiently pervasive or severe as to alter the conditions of his employment and created an abusive working relationship. *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). Though Dr. Mattioda was granted leave to amend, the SAC repeated the FAC's conclusory allegations. The SAC still lacked facts linking the alleged conduct to Dr. Mattioda's disability and did not sufficiently allege conduct that rose to the level of harassment. On appeal, Dr. Mattioda argues that the district court did not take into consideration all of his allegations, but it is evident from the district court's decision that it considered all of the facts (rather than beliefs) in the SAC. The district court therefore properly dismissed Dr. Mattioda's harassment claim.

Further, on summary judgment, Dr. Mattioda lacked sufficient evidence to create a genuine issue of material fact as to his surviving disability discrimination claims, including regarding his non-selection for the ST position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). The district court correctly found that Dr. Mattioda lacked sufficient evidence to build a prima facie case that his non-selection was discriminatory and also lacked sufficient evidence to rebut NASA's legitimate, nondiscriminatory reasons behind the non-selection as pretext.

On appeal, Dr. Mattioda asserts that Dr. Lee acted as a "cat's paw," resulting in discrimination, but Dr. Mattioda fails to point to admissible evidence that could establish discriminatory animus.  For these reasons, the district court properly granted summary judgment for NASA on Dr. Mattioda's disability discrimination non-selection claim.

## STANDARD OF REVIEW

### I.  Motion to Dismiss for Failure to State a Claim

This Court reviews a dismissal for failure to state a claim under Rule 12(b)(6) de novo.  *See Heimrich v. Dep't of the Army*, 947 F.3d 574, 577 (9th Cir. 2020).  A Rule 12(b)(6) motion tests "the legal sufficiency of a claim" at the pleading stage.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level," and "possess enough heft" to show a plaintiff's entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  A complaint that fails to satisfy Rule 8(a) is subject to dismissal under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't,*

901 F.2d 696, 699 (9th Cir. 1990). The Supreme Court's decisions in *Twombly*, 550 U.S. at 544, and *Iqbal*, 556 U.S. at 662, establish that conclusory allegations are insufficient to withstand a Rule 12(b)(6) challenge. The district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To avoid dismissal, a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" only if the complaint pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 556 U.S. at 678. While the district court must treat all factual allegations as true for purposes of a motion to dismiss, the district court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

## II. Motion for Summary Judgment

This Court likewise reviews a district court's order granting summary judgment de novo. *See Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021); *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127 (9th Cir. 2020). The purpose of summary judgment is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate when the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49. A fact is "material" if it might affect the outcome of the case. *Id.* at 248.

The moving party has no burden to produce any evidence on elements of a claim on which the nonmoving party will bear the burden at trial but can merely point out an absence of evidence. *See Celotex*, 477 U.S. at 322-23. Summary judgment is proper if the non-moving party fails to produce sufficient evidence on any element of his case. *Id.* at 322. The bare existence of a "scintilla" of evidence in support of the non-moving party's position is not sufficient; the non-moving party must offer sufficient evidence on which a finder of fact could reasonably find for him. *See Anderson*, 477 U.S. at 252. The mere suggestion that facts are in controversy, in combination with conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## ARGUMENT

### I.     The District Court Properly Dismissed Dr. Mattioda's Disability-Based Harassment Claim for Failure to State a Claim

Dr. Mattioda's complaints pleaded only conclusory allegations and suppositions that the alleged harassing events were based on his disability and

failed to allege events that rose to the level of harassment. The district court properly dismissed this claim under Rule 12(b)(6).

The Ninth Circuit has not determined whether the ADA or Rehabilitation Act gives rise to a harassment claim. *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003). However, the Court can "[a]ssume[] without deciding that such a claim exists in this circuit . . . and that [the Court] would apply Title VII law to analyze it." *Garity v. APWU Nat'l Lab. Org.*, 655 F. App'x 523, 524 (9th Cir. 2016). The Fifth Circuit has addressed this issue by borrowing the framework from Title VII hostile work environment cases to analyze the plaintiff's claim. "To succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Flowers*, 247 F.3d 229 at 232. The harassment "must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* at 236 (internal quotation and citation omitted); *see also Garity*, 655 F. App'x at 524. It also "must be both objectively and subjectively offensive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

A.    **Dr. Mattioda Did Not Plead Facts Showing a Nexus Between His Disability and the Allegedly Harassing Conduct**

Although Dr. Mattioda's FAC broadly asserted that NASA engaged in discriminatory harassment by "failing to treat plaintiff in the same manner as non-disabled employees, continuously and pervasively harassing [Mattioda] over many years (including with respect to evaluations and promotions), and directing adverse treatment against him because of his disability conditions," it lacked the factual allegations necessary to support those claims. SER-207. Even after being permitted leave to amend, instead of pleading specific facts demonstrating how the alleged actions were motivated by his disability, Dr. Mattioda added only conclusory statements, such as Mattioda "felt such a photograph would not be necessary if Dr. Lee did not assume disabled scientists were less productive than other scientists." 3-ER-387. Aside from such statements, Dr. Mattioda made no effort to plead facts that provide a connection between the actions alleged and his disability. *See Starr*, 652 F.3d 1202 at 1216 (explaining that allegations in a complaint "may not simply recite the elements of a cause of action"); *Iqbal*, 556 U.S. at 678-69 (noting that it is not fair to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Indeed, most of Dr. Mattioda's allegations did not even mention his disability. The FAC alleged a series of remarks by Dr. Lee and Dr. Dotson that Dr. Mattioda alleged were harassing. *See, e.g.*, SER-177, 179, 181–182, 187. Many, if

17

not all, of these alleged remarks have no apparent link to Dr. Mattioda's disability. For example, Dr. Mattioda labeled a conversation in which Dr. Lee allegedly said he did not respect Dr. Mattioda's work and that Dr. Allamondola "is doing all the work for you" as a harassing comment. SER-179–180. Another alleged harassing comment was Dr. Lee's statement that Dr. Mattioda should seek labor funding from NASA Headquarters since Dr. Mattioda chose to step down from the Deputy Branch Chief position. SER-181–182. Dr. Mattioda also claimed that Dr. Dotson's request that Dr. Mattioda sign a letter rejecting his request that Dr. Dotson reconsider his performance review rating was "harassing because the agency's regulations required Dotson, not [Mattioda], to sign that form." SER-187. None of these incidents are linked to Dr. Mattioda's disability.

When given leave to amend his deficient complaint, Dr. Mattioda continued making bald conclusory allegations in his SAC without alleging facts that could support a nexus between the alleged conduct and his disability. Instead, Dr. Mattioda repeated many of the allegations from his FAC and often did not even mention his disability. 3-ER-394–398, 401–406. Where the SAC did not merely repeat the allegations of the FAC, Dr. Mattioda did not allege additional facts but only suppositions or inferences that there must be some connection between a given incident and his disability. *See* 3-ER-384 (alleging that Dr. Lee commented that Dr. Allamondola was doing all the work for Dr. Mattioda, "implying that

[Mattioda] was less productive than other researchers because of his disabilities"); 3-ER-385 ("Dr. Lee's comments repeatedly implied [Mattioda] was less productive than other employees because [Mattioda]was a disabled person"); *id.* (in a meeting with an AMES ombudsman, Dr. Mattioda was "feeling isolated and 'singled out' as the only disabled researcher in his cohort"); 3-ER-387 ("[Mattioda] felt such a photograph" of him giving a presentation at a conference "would not be necessary if Dr. Lee did not assume that disabled scientists were less productive than other scientists"); *id.* (Dr. Lee's comment that Dr. Mattioda should ask NASA Headquarters for labor funding for himself since Mattioda "chose to step down" from the Deputy Branch Chief position "were intended to ridicule and harass [Mattioda]"); 3-ER-395 (Dr. Lee's comments that Dr. Mattioda "can't get any funding on his own" and that if other scientists involved involving Dr. Mattioda in a research project "good luck getting him to do anything" "implied [Mattioda]was lazy and less productive than other scientists because of his disabled status"); 3-ER-399 (Dr. Dotson's communications with fund manager about Dr. Mattioda's needs for reasonable accommodation "were harassing, humiliating, and infuriating, because they imply that a disabled scientist cannot manage project funding as well as a non-disabled scientist"); 3-ER-403–404 (Dr. Lee loudly asking Dr. Mattioda questions "implied [Mattioda]was incapable, because of his disabilities, or too lazy to manage Dr. Boersma").

The district court found that the only factual allegation in the SAC that did plead a link between the alleged harassing comments and Dr. Mattioda's disability was when Dr. Dotson "threatened that if [Mattioda]continued to make reasonable accommodation requests for his disabilities, [Mattioda]could 'lose [his] job' because of the requests." *See* 1-ER-042 (citing 3-ER-386). However, the district court correctly found that read in the light most favorable to Dr. Mattioda, this allegation mostly supported his failure to accommodate claim, not the harassment claim, and that it was time barred because that incident occurred in 2011. 1-ER-042.

At base, Dr. Mattioda was left with mostly unsupported, conclusory allegations to support his harassment claim. Bare assertions that are actually legal conclusions, such as assertions that a defendant acted "solely on account of [the plaintiff's] religion, race, and/or national origin and for no legitimate [ ] interest," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 680; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) ("The bald allegation of impermissible motive on the Agents' part, standing alone, is conclusory and is therefore not entitled to an assumption of truth."). The district court properly dismissed Dr. Mattioda's harassment claim for failure to state a claim because he failed to establish a link between the alleged harassment and his disability.

**B.** **Dr. Mattioda Did Not Plausibly Allege Severe or Pervasive Harassment**

Even if Dr. Mattioda had pleaded facts showing a link between the alleged harassing conduct and his disability, Dr. Mattioda failed to plead facts establishing that this conduct rose to the level of severe or pervasive harassment in either his FAC or SAC. To allege actionable harassment, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). Courts must "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787-88 (quotations omitted). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000). This is because employment discrimination statutes are "not a general civility code." *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010) (quoting *Faragher*, 524 U.S. at 788).

Here, Dr. Mattioda's allegations in support of his harassment claim included 1) negative statements from Dr. Lee and Dr. Dotson, 2) a transfer to another division that Dr. Mattioda both requested and accepted, 3) Dr. Lee exercising

supervisory authority by meeting with other scientists and determining who certain scientists would report to, and 4) not being selected for the ST position. 3-ER-411. Dr. Mattioda largely complains of NASA management exercising their normal supervisory authority to assign work and make selections. And while he disagrees with the exercise of that authority, that does not render that exercise of authority harassment. The personal conflicts between Dr. Mattioda and Dr. Lee or Dr. Dotson are "ordinary tribulations of the workplace," *Faragher*, 524 U.S. at 788, and although Dr. Mattioda's jaundiced eye attributes these conflicts to discrimination, there is no objective evidence alleged to support that attribution.

Even assuming that these actions occurred as alleged, by no standard would these normal workplace occurrences rise to a level of offensiveness, let alone to the point of an abusive working relationship. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Nor would these actions rise to the level of "severe or pervasive" harassment sufficient to support a hostile work environment cause of action on the basis of Dr. Mattioda's disability. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003) (finding that a few incidents of comments explicitly invoking plaintiff's ethnicity, dispersed over more than a year, did not rise to the level of a hostile work environment); *Keller-McIntyre v. San Francisco State Univ.*, No. 06-cv-3209 MMC, 2007 WL 776126, at *13 (N.D. Cal. Mar. 12, 2007) (finding that "employment decisions with which [plaintiff] disagreed" without

physical or verbal conduct of a harassing nature did not constitute harassment). The district court properly dismissed Dr. Mattioda's harassment claim because the allegations did not demonstrate a hostile work environment.[4]

### C. The District Court Properly Considered All of Dr. Mattioda's Allegations and Applied the Correct Pleading Standard

Contrary to Dr. Mattioda's assertions, the district court examined the entirety of the circumstances Dr. Mattioda alleged in evaluating his claim for harassment. When the district court identified examples of Dr. Mattioda's allegations of harassment that contained only conclusions of discriminatory intent and not factual support, it cited alleged incidents dating back to 2011. 1-ER-041–042. It is also evident that the district court considered the full spectrum of Dr. Mattioda's allegations of harassment because it discussed those allegations in finding them insufficient in both the FAC and SAC. 1-ER-041–042, 072–073. Once the district court discounted the suppositions that were not sufficiently supported, it properly concluded that Dr. Mattioda's allegations failed to state a claim.

---

[4] The district court found that Dr. Mattioda's allegations did not rise to the level of harassment in its order dismissing Dr. Mattioda's FAC and appeared to adopt that holding again in its order dismissing the SAC. 1-ER-041, 073. This Court "may affirm based on any ground supported by the record." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

Dr. Mattioda's reliance on *Flowers* to demonstrate what constitutes a totality of the circumstances analysis is inapposite. First, the Fifth Circuit was examining the evidence presented during a jury trial in the context of a motion for judgment as a matter of law, which requires special deference to the jury. *Flowers*, 247 F.3d at 235. Second, the alleged harassment was far more severe than that alleged by Dr. Mattioda. Flowers presented evidence that she was subject to write ups, placements on probation, and eventual discharge. *Id.* at 237. Similarly, in *Ray*, not only was Ray subject to the more minor issues noted by Dr. Mattioda, but also his supervisor made physically threatening gestures causing him to flee from a meeting. *Ray v. Henderson*, 217 F.3d 1234, 1238 (9th Cir. 2000). Those cases, when viewed in their totality, portray much more severe conduct that sufficiently constitutes a hostile work environment. Here, Dr. Mattioda has not pleaded sufficient allegations apart from conjecture and supposition to elevate his disagreement and personal conflicts with his managers to harassment based on his disability.

Similarly, *Swierkiewicz* does not rescue Dr. Mattioda's complaint. *Swierkiewicz* held that a plaintiff need not allege every exacting element of a prima facie case in a Title VII complaint. *See Twombly*, 550 U.S. at 569 ("We reversed [in *Swierkiewicz*] on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement . . . . Here, in

contrast, we [require] . . . only enough facts to state a claim to relief that is plausible on its face."). In *Twombly* and *Iqbal*, the Supreme Court further held that a complaint must allege facts, not "mere conclusory statements," that demonstrate a claim is plausible, not merely possible. *Iqbal*, 556 U.S. at 678. Here, the district court did not require Dr. Mattioda to plead every detailed requirement of a prima facie case. The district court properly found that the facts alleged by Dr. Mattioda did not plausibly connect the alleged harassing conduct to Dr. Mattioda's disability or rise to the level of harassment.

## II. The District Court Properly Granted NASA's Motion for Summary Judgment on Dr. Mattioda's Disability Discrimination Claim Based on his Non-Selection

The district court properly granted summary judgment in favor of NASA on Dr. Mattioda's disability discrimination claim because Dr. Mattioda did not adduce facts that could be presented in an admissible manner that the non-selection was based on his disability and because Dr. Mattioda did not present sufficient evidence that NASA's justification that the chosen candidate was superior was pretextual.

Disability discrimination claims against federal employers under Rehabilitation Act § 501 are analyzed using a burden-shifting framework. *See Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998) (applying the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) framework

to a Rehabilitation Act claim); *Lober v. Dejoy*, 845 F. App'x 672, 673 (9th Cir. 2021). To overcome a motion for summary judgment, the plaintiff must establish a prima facie case of disability discrimination. *See Vasquez*, 349 F.3d at 640. To state a prima facie case of disability discrimination, a plaintiff must establish that "(1) [he] is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of [his] disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). If the plaintiff establishes such a case, "summary judgment is still proper if the defendants can rebut [the] prima facie case with evidence of a nondiscriminatory reason for the [action]." *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990). The burden then "shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination." *Id.*

To prove the nondiscriminatory grounds were pretextual, the plaintiff must establish that the neutral explanation is "'unworthy of credence' because it is internally inconsistent or otherwise not believable*." Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (internal quotation omitted). An employee "cannot simply show the employer's decision was wrong, mistaken, or unwise." *Dep't of Fair Employment & Housing*

26

*v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal quotation and citation omitted).  Instead, "the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for the . . . non discriminatory reasons."[5]  *Id.*

### A.    Dr. Mattioda Cannot Establish a Prima Facie Case Because Dr. Sandford's Superior Qualifications, Not Dr. Mattioda's Disabilities, Motivated the Hiring Decision

The district court properly found that Dr. Mattioda did not establish a prima facie case because he did not adduce facts that his disability motivated his non-selection for the ST position.  *See Celotex*, 477 U.S. at 324.  Dr. Mattioda's non-selection is not best explained by disability discrimination, as he applied for an incredibly competitive role which went to a more qualified candidate.  Of the approximately 1,100 civil servants at ARC, there were just eight ST positions.  2-ER-278.  There were seven applicants for the ST position Dr. Mattioda sought and three finalists.  2-ER-306.  This made it more likely than not that any given candidate would not be selected.

---

[5] Although *Lucent* involved a claim under the California Fair Employment and Housing Act, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination."  *Lucent*, 642 F.3d at 745.

Particularly, Dr. Mattioda cannot show the non-selection was motivated by his disabilities because many of the decisionmakers were only vaguely familiar, or completely unfamiliar, with his disability status. *See Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996) (holding that to show an action was taken "because of" a disability, the employer must have known of the disability). Dr. Zornetzer, the selection panel chair and Dr. Tu, the selecting agent, were unaware of Dr. Mattioda's disability. 2-ER-277, 285. Two other panel members had vague or no knowledge of Dr. Mattioda's disability status. 2-ER-317–318 (Dr. Bernstein); 2-ER-300–301 (Dr. Bajpayee). Dr. Mattioda could not point to any instance of panel members, many of whom did not know of his disability, saying anything discriminatory during the selection process. SER-076. Dr. Mattioda only notes that some panel members were aware he made past EEO complaints but presented no evidence that this knowledge prompted anyone to consider his disability when making decisions. The district court was not required to adopt unreasonable inferences from circumstantial evidence and correctly determined that Dr. Mattioda did not establish a prima facie case. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 441 (9th Cir. 1990) (explaining that courts need not "draw unreasonable inferences from circumstantial evidence.").

Dr. Mattioda's argument that that the district court erred because use of the h-index[6] alone is evidence of discrimination rings hollow. First, an h-index is facially neutral, and it was applied consistently to all of the applicants for the position. 2-ER-205–228. Indeed, the h-index significantly reduced the h-index score Dr. Sandford listed for himself in his application, from 67 to 58 (-9). 2-ER-191, 217. It also reduced Dr. Salama's self-reported score from 34 to 29 (-5). 2-ER-180, 211. Dr. Mattioda believes that the h-index disadvantaged him because it rewards years of experience, but nothing in the Rehabilitation Act says the selection criteria for a position must be tailored to his preference. 3-ER-409.

Second, Dr. Mattioda did not present evidence that alternative citation indices would show he was more qualified than Dr. Sandford. On the contrary, Dr. Mattioda admitted there is likely no citation index in which he would have outscored Dr. Sandford. SER-076–077. Dr. Bernstein concurred—the difference in publication numbers between Dr. Sandford and Dr. Mattioda was so stark that alternative indices would result in the same determination. 2-ER-320. Dr. Zornetzer indicated a different index would make no difference as it was only part of one evaluation criteria and Dr. Sandford received the highest scores across all

---

[6] The Hirsch index or h-index "is defined as the highest number of publications of a scientist that received *h* or more citations each while the other publications have not more than *h* citations each." M. Schreiber, *An empirical investigation of the g-index for 26 physicists in comparison with the h-index, the A-index, and the R-index*. 59 J. Assoc. Inf. Sci. Technol. 1513 (2008).

five criteria. 2-ER-290. Additionally, the panel would have recommended Dr. Sandford even without the candidates' h-index citation data. SER-047, 050–051 (panel members stating the h-index "was not a determining factor in any decision. It was just another piece of information.").

The district court properly determined that the use of the h-index, on its own, did not demonstrate that Dr. Mattioda's disability was a motivating factor behind his non-selection.

### B. Dr. Mattioda Did Not Establish that Dr. Lee Improperly Influenced the Panel

Dr. Mattioda appears to argue not that the use of the h-index was discriminatory, but rather that Dr. Lee's provision of the h-index to the selection panel was discriminatory. And although Dr. Mattioda claims Dr. Lee's time on the selection panel corrupted the process under a "cat's paw" theory, he does not provide sufficient evidence that Dr. Lee's involvement influenced the hiring process or was based on targeting Dr. Mattioda for his disability.

Dr. Mattioda faults the district court's conclusion that he did not establish that Dr. Lee possessed discriminatory animus, Dkt. No. 11 ("Opening Br.") at 46, but he points to no admissible evidence, or evidence that could be presented in admissible form, to undermine the district court's conclusion. *See* Fed. R. Civ. P. 56(c)(2). Dr. Mattioda sets out all of the ways he believes Dr. Lee harassed him on the basis of his disability in his opening brief, but those statements are supported

only by citations to the SAC. *See* Opening Br. at 12–23. Citations to the pleadings alone are not sufficient to defeat a motion for summary judgment. *See Celotex*, 477 U.S. at 324 (A "proper summary judgment motion [may] be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.").

Moreover, many of Dr. Mattioda's allegations in the SAC relied on in the opening brief are inadmissible hearsay. *See, e.g.*, Opening Br. at 18 (statement of Dr. Allamandola of what Dr. Lee said); 20 (reports from unnamed friends or colleagues). Other assertions Dr. Mattioda presented as evidence to the district court are inadmissible speculation about others' thoughts or intentions. *See, e.g.*, 2-ER-256 ("Dr. Lee's shouting implied I was incapable, because of my disabilities, or too lazy to manage Dr. Boersma. . . . The purpose and effect of Dr. Lee's outburst was to embarrass and humiliate me" in front of colleagues); 2-ER-256 ("Dr. Lee purposefully excluded me . . . because he thought my disabilities rendered me incompetent. He also excluded me to harass, humiliate, intimidate, and embarrass me, and in retaliation"); 2-ER-264 (the promotion panel chair "had no knowledge about the h-index, and thought it was an 'astrophysics thing,' meaning he relied quite heavily on Dr. Lee's data"); 2-ER-265 ("But for my disability, Dr. Lee's endless efforts, and my prior EEO complaints, Dr. Howell would not have treated me in this manner."). After discovery, Dr. Mattioda did not

proffer any admissible evidence to support these allegations, and he did not file any declarations from witnesses who could testify to these allegations.

Additionally, the cat's paw doctrine does not apply when the allegedly biased supervisor provides truthful information to the decision-maker. *See, e.g.*, *Davis v. Omni-Care*, 482 F. App'x. 102, 109–110 (6th Cir. 2012) (holding that the cat's paw theory did not apply when information provided to the supervisor was not inconsistent with actual events). Dr. Lee gave the panel truthful, relevant, publicly available, and non-dispositive Web of Science information about the candidates' publication impact before he recused himself. He never recommended the panel pick Dr. Sandford over Dr. Mattioda. Dr. Lee did not cause the panel to select Dr. Sandford. The panelists recommended Sandford because of his superior qualifications, as explained in their depositions and declarations submitted to the district court. *See* 2-ER-288, 302, 309–314, 318–320, 361–363; SER-023–024, 030, 038–039, 053.

The district court properly found that Dr. Mattioda failed to establish a triable issue of fact regarding whether Dr. Lee was motivated by discriminatory animus in providing the h-index and otherwise did not establish a prima facie case of discrimination regarding his non-selection.

**C.** **Even if Dr. Mattioda Could Establish a Prima Facie Case, the Panel and Dr. Tu Were Guided by the Legitimate Purpose of Hiring the More Qualified Candidate**

The district court correctly found that even if Dr. Mattioda had made a prima facie case, NASA provided a non-discriminatory explanation for hiring Dr. Sandford instead of Dr. Mattioda for the ST position.  The hiring process had numerous guardrails to ensure that the most qualified applicant was hired.  First, Human Resources created a job posting and evaluation criteria before knowing who, disabled or otherwise, would apply for the position.  *See* 2-ER-268–274.  For each candidate, a four-member panel independently used the same standard, agency-wide NASA ST Evaluation Criteria form used to select senior scientists across NASA (2-ER-084–85; SER-053–054; SER-009–011) and met to establish a group consensus.  2-ER-286.  Though the panel had discretion as to how to weight the rating criteria (SER-012), the panelists adhered to the NASA-wide evaluation instructions they were given and avoided side conversations and comments.  SER-021, 036.  Once the panel made a recommendation, Dr. Tu reviewed the recommendation to ensure its accuracy before making the final recommendation to NASA Headquarters.  2-ER-278.

Through this process, Dr. Mattioda was compared to an outstanding co-applicant, Dr. Sandford, who each panel member independently concluded was most qualified.  2-ER-309–314; *see also* 2-ER-288 (Dr. Zornetzer elaborating on

his reasons for rating Dr. Sandford the highest); 2-ER-302 (Dr. Bajpayee's explanation); 2-ER-361–363 (Dr. Fonda's explanation); 2-ER-318–320 (Dr. Bernstein's explanation). With consensus following their independent reviews, the panel unanimously recommended Dr. Sandford for the ST position. 2-ER-306–307. Dr. Tu reviewed the panel recommendation and concurred that Dr. Sandford was the most qualified applicant due to his strong publication record, impact on the scientific community, outstanding record as an investigator, and strong engagement with professional societies. 2-ER-279. Moreover, as further evidence that disability discrimination played no role in the decision, the third finalist, Dr. Salama, was not disabled yet lost out on the position for the same reasons as Dr. Mattioda: "although both were solid scientists, neither had backgrounds as strong as Dr. Sandford in publications, citations, impact on scientific community, or in their engagement with professional societies." *Id.*

Dr. Mattioda himself articulated non-disability-related reasons for Dr. Sandford's selection during the EEO administrative process. He stated that Dr. Sandford had 37 years of relevant experience while he only had 15 (2-ER-338), amounting to a complaint that seniority factored into the hiring for the ST position. He further alleged that a conversation with panel member Dr. Bernstein "impl[ied] Dr. Sandford was going to be the Selectee regardless of who was up against him." 2-ER-342. By Dr. Mattioda's theory, Dr. Sandford's selection was predestined

regardless of the disability status of the other applicants.  Even if, *arguendo*, the panel had played favorites with Dr. Sandford based on seniority, that would not contravene the Rehabilitation Act, as favoritism is insufficient to support a claim of disability discrimination.  *Cf. Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1290 (9th Cir. 2000) ("The favoritism of managers is not age discrimination.") (quotation omitted).

### D.  Dr. Mattioda Cannot Show the Hiring Explanation Is Pretextual

Dr. Mattioda "must do more than establish a prima facie case and deny the credibility of [NASA's] witnesses"; he must offer "specific and significantly probative evidence" that the proffered reasons are pretextual.  *Schuler v. Chronical Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).  Dr. Mattioda must show the reasons behind the unanimous decision to hire Dr. Sandford are unworthy of credence, and instead the evaluators were guided by discriminatory animus.  Dr. Mattioda attempts to do so by pointing again to Dr. Lee's provision of the h-index and his comments alleged in the SAC.  Opening Br. at 48-49.  For the same reasons as those set out above, Dr. Mattioda did not establish these alleged comments and Dr. Mattioda's suppositions of motive by sufficient admissible evidence.  Moreover, even if such evidence were admissible, Dr. Mattioda's background evidence is immaterial to the legitimate reasons established by NASA for selecting Dr. Sanford because it does not "directly refute the legitimate reason

offered" by the decisionmakers. *Puletasi v. Wills*, 290 F. App'x 14, 18-19 (9th Cir. 2008).

Finally, Dr. Mattioda cannot show pretext as he was not the "clearly superior" candidate. *See Peters v. Shamrock Foods Co.*, 262 F. App'x 30, 33 (9th Cir. 2007) (citing *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (holding in non-selection cases, pretext can be shown by demonstrating one is the "clearly superior" candidate). The panel members were unanimous in the individual assessments they wrote independently and unanimous in their joint recommendation that Dr. Sandford was the superior candidate. *See* SER-052 (not a "close call" when rating Dr. Mattioda as "qualified" and Dr. Sandford as "highly qualified"); SER-030 ("between these candidates, Sandford was far and away" the superior candidate); SER-038–039 ("In all categories he [Sandford] outranked the rest of the applicants"); SER-023–024 ("Dr. Sandford has a stronger experience," "better known in the scientific community," "large missions also talks to his leadership," "his recognition in the scientific community," "Dr. Sandford was a better candidate"). Dr. Tu concurred after independently reviewing the candidates' applications to double-check the panel's work. 2-ER-278–280.

The record provides overwhelming evidence of the panelists' non-discriminatory reasons for selecting Dr. Sandford. By contrast, Dr. Mattioda's

basis for pretext only amounts to speculation and disagreement with the outcome because of his subjective but unsupported belief in his superiority as a candidate. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). Thus, the district court properly granted summary judgment in favor of NASA.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's orders dismissing Dr. Mattioda's harassment claim and granting summary judgment in favor of NASA on Dr. Mattioda's non-selection disability discrimination claim.

Dated: February 17, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Adrienne Zack*
ADRIENNE ZACK
Assistant United States Attorney

Attorneys for Defendant-Appellee

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  | 22-15889

I am the attorney or self-represented party.

**This brief contains** | 8,408 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [　　　].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Adrienne Zack | **Date** | Feb 17, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**  *Rev. 12/01/2018*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Appellee hereby states that there are no known related cases pending in this Court.

Dated: February 17, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Adrienne Zack*
ADRIENNE ZACK
Assistant United States Attorney

Attorneys for Defendant-Appellee